Arthur L. **BELFORD**, Petitioner–Appellant,

v.

**UNITED STATES of America,** Respondent–Appellee.

No. 91–3595.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1992.

Decided Sept. 11, 1992.

James C. McKinley (argued), Gregory F. Hahn, Tabbert & Ford, Indianapolis, Ind., for petitioner-appellant.

Christina McKee, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Indianapolis, Ind., for respondent-appellee.

Before MANION, Circuit Judge, and FAIRCHILD and WOOD, Jr., Senior Circuit Judges.

MANION, Circuit Judge.

In 1990, Arthur Belford pleaded guilty to a violation of 18 U.S.C. § 371. He was sentenced to three years, a fine of $250,000 and restitution. On July 8, 1991, Belford filed a motion under 28 U.S.C. § 2255 collaterally attacking the validity of his guilty plea and resulting sentence. The district court denied the motion after concluding that Belford had not raised the issues in his section 2255 motion on direct appeal and had not shown cause for and actual prejudice resulting from the default. Belford appeals the district court's denial of his motion to vacate his sentence under 28 U.S.C. § 2255. We affirm.

## I. Facts

Arthur L. Belford was the chief executive officer and majority stockholder of Circle Express, Inc. The government charged Belford with violating 18 U.S.C. § 371 by conspiring to make false statements and representations to the Securities and Exchange Commission in violation of 18 U.S.C. § 1001. Under a five-page plea agreement, Belford agreed to: plead guilty and waive indictment; cooperate fully in the government's investigation; make restitution by relinquishing all interest held by him or his immediate family in the stock of Circle Express; together with his wife, execute a ten-year promissory note without interest in the sum of $200,000; pay the

sum of $200,000 in cash; relinquish the stock, promissory note and cash on or before sentencing by depositing it in escrow; and pay $25,000 to the United States to help cover the costs of the investigation. In exchange, the government agreed: not to seek any further fine or restitution; not to institute any other charge against Belford arising from its investigation of Belford and Circle Express; to inform the sentencing court of the nature of and extent of Belford's cooperation; and to make no recommendation at the time of sentencing as to the sentence to be imposed.

Three provisions in the plea agreement contained several paragraphs warning Belford of the penalties for his offense and the consequences of pleading guilty. First, Paragraph 1 stated that "[t]he maximum penalty for [conspiracy to provide false information to the SEC in violation of 18 U.S.C. § 1001] is five years imprisonment, or a fine of $250,000.00 or both, as well as an assessment in the amount of $50.00." Second, Paragraph 6 provided:

> If the Court imposes a sentence with which the Defendant is dissatisfied, the Defendant will not be permitted to withdraw any guilty plea for that reason alone, nor will the Defendant be permitted to withdraw any plea should the Court decline to follow any recommendations by any of the parties to this Agreement.

Finally, in Paragraph 11, the agreement stated:

> The Defendant acknowledges that no threats, promises or representations have been made, nor agreements reached, other than those set forth in this document, to induce the Defendant to plead guilty.

Upon questioning by the district judge at the sentencing hearing, Belford stated that he understood the terms of the plea agreement and denied that his plea was induced by any promises beyond those contained in the agreement. The district judge accepted Belford's plea, entered judgment and sentenced Belford to three years imprisonment. The court also ordered restitution as set forth in the plea agreement but provided that payments should be made within nine months. In addition, the court ordered a $250,000 fine. Belford did not appeal.

On October 11, 1990, represented by new counsel, Belford filed a motion to reduce his sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure (as in effect prior to December 1, 1991). Belford argued that he did not know the terms of the plea agreement allowed the district court to fine him $250,000 and that he was sentenced more severely than his co-defendant. Belford requested that the court suspend the balance of his executed sentence, place him on probation on the condition that he perform one year of community service, and vacate the order to pay the $250,000. The court denied the motion, but Belford did not appeal.

On July 9, 1991, Belford, represented by yet a third attorney, filed the section 2255 motion seeking to invalidate both his guilty plea and his sentence. Belford claimed that the fine imposed by the district court represented a rejection of the plea agreement, and therefore Belford should be permitted to withdraw his plea; that his counsel at the sentencing hearing was ineffective because he did not pin down specific figures concerning the loss to Circle Express stockholders resulting from Belford's criminal activities; that the sentencing judge did not comply with Fed.R.Crim.P. 32(c) because he failed to specifically resolve disputed factual issues; that the sentencing judge was biased against the defendant; that the court improperly joined Belford's wife in the restitution program; and that the court abused its discretion in sentencing Belford more severely than his co-defendant. In response, the government pointed out that Belford had not raised these issues on direct appeal and had not shown cause for the default or prejudice resulting from the alleged errors. In his reply, Belford raised the ineffectiveness of his trial counsel as the "cause" for his procedural default and requested an evidentiary hearing. The district court did not hold an evidentiary hearing but concluded that Belford had not shown cause and prejudice.

On appeal, Belford argues that his counsel's ineffectiveness constituted cause for his procedural default; that he should have been afforded an evidentiary hearing; that his plea agreement is invalid because it requires his family to make restitution; and that he is entitled to a different judge if the case is remanded. Because we find that Belford has failed to show cause for and prejudice resulting from his failure to appeal, we affirm.

## II. Analysis

■■■ Collateral relief under section 2255 is available if any legal error in taking a prisoner's guilty plea or sentencing him subsequent to that plea was "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir.1992) (quoting *Haase v. United States*, 800 F.2d 123, 126 (7th Cir.1986), *petition for cert. filed* (U.S. Jul. 22, 1992) (No. 92–5288)). However, a section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal. *E.g., Johnson v. United States*, 838 F.2d 201, 202 (7th Cir.1988); *Qualls v. United States*, 774 F.2d 850, 851 (7th Cir.1985); *Norris v. United States*, 687 F.2d 899, 900 (7th Cir.1982). As a result, there are three types of issues that a section 2255 motion can*not* raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal;[1] and (3) constitutional issues

that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal. *United States v. Rodriguez*, 792 F.Supp. 1113 (N.D.Ill.1992); *see Norris*, 687 F.2d at 900 and 903–04 (On appeal from the denial of a section 2255 motion, the court refused to consider issues previously decided on direct appeal from the conviction and nonconstitutional issues that could have been but were not raised on direct appeal. The court would consider constitutional issues that could have been raised on direct appeal only if petitioner showed cause and prejudice); *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir.1989) (failure to raise a constitutional challenge which could have been raised on direct appeal precludes section 2255 review absent a showing of cause for the procedural default as well as actual prejudice resulting from the failure to appeal); *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988) (citing *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969)) ("non-constitutional errors which could have been raised on appeal but were not, are barred on collateral review—regardless of cause and prejudice."). Belford maintains that he is entitled to relief under section 2255 because he raises constitutional issues not raised on appeal and has demonstrated the requisite cause and prejudice.[2]

■■■ To meet the cause and prejudice test, Belford argues that his counsel's fail-

---

1. Although nonconstitutional issues cannot serve as an independent basis for section 2255 relief, the fact that the nonconstitutional issues were not raised on direct appeal can be used as evidence of ineffective assistance of counsel. Ineffective assistance of counsel, because it is a constitutional issue, can in turn serve as a valid basis for section 2255 relief.

2. The cause and prejudice standard applies with equal force whether a petitioner collaterally attacks his conviction following a trial or, like Belford, collaterally attacks his guilty plea and sentence. *Williams v. United States*, 805 F.2d 1301, 1306–07 (7th Cir.1986), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1978, 95 L.Ed.2d 818 (1987). Furthermore, the cause and prejudice standard applies whether a petitioner has failed to raise a

particular claim on appeal or, like Belford, failed to appeal at all. *Coleman v. Thompson*, — U.S. ——, ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). *Coleman* involved habeas corpus for a state prisoner rather than section 2255 relief for a federal prisoner, but there is no reason to distinguish between section 2254 motions and section 2255 motions in regard to this issue. Furthermore, this court has applied the cause and prejudice standard where a section 2255 petitioner failed to appeal at all. *See Johnson*, 838 F.2d at 202; *also see id.* at 206 (Ripple, J., concurring) (pointing out that despite the Supreme Court's reticence on the issue (prior to *Coleman*), this circuit applied "cause and prejudice" standard to a complete failure to appeal a judgment).

ure to advise him about his limited appellate rights constituted ineffective assistance of counsel which in turn constituted "cause" for his appellate procedural default. In *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court held that ineffective assistance of counsel may constitute cause for a procedural default. If a petitioner's default results from the denial of the sixth amendment right to effective assistance of counsel, then the government, "which is responsible for the denial as a constitutional matter, must bear the cost of any resulting default and the harm to state interests that federal habeas review entails." *Coleman*, — U.S. at —, 111 S.Ct. at 2567. However, "so long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), there is] no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645. Furthermore, the Court explained that "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." *Id.* at 492, 106 S.Ct. at 2647.

To satisfy the first prong of the cause and prejudice test, then, Belford must show that his counsel's performance constituted ineffective assistance of counsel under *Strickland*. In order to show ineffective assistance of counsel under *Strickland*, Belford must satisfy yet another two-pronged test by showing: (1) "counsel's representation fell below an objective standard of reasonableness" (the performance prong); and (2) "there is a reasonable probability that, but for counsel's professional error, the result of the proceeding would have been different" (the prejudice prong). *Strickland*, 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2068.

The cause and prejudice test and the *Strickland* test seem to overlap. "Prejudice" under the cause and prejudice test "does not mean simply that a procedural default occurred, that there was legal cause for the default, and that, because of it, a potential claim never was heard." J. Potuto, *Prisoner Collateral Attacks: Federal Habeas Corpus and Federal Prisoner Motion Practice* § 7.9 (1991). Rather, it means that there is a "reasonable probability" that if the petitioner had appealed he would have won. *See id.* Both prejudice under *Strickland* and prejudice in the "cause and prejudice" test, then, require the petitioner to address the merits of the claims in his section 2255 motion. Although there remains some debate as to whether "prejudice" under *Strickland* and "prejudice" under the cause and prejudice standard are identical, *see Freeman v. Lane*, 962 F.2d 1252, 1259 n. 5 (7th Cir. 1992) (noting the debate), we need not resolve that issue here because, as we explain below, Belford has not met the prejudice prong of *Strickland*.

According to Belford, he asked his attorney immediately after sentencing whether he could withdraw his plea or appeal the sentence and his attorney advised him that no remedy was available. If Belford's counsel told him that no appeal was available after a judgment entered subsequent to a guilty plea, he was wrong. "A judgment entered on a guilty plea is an appealable order, albeit the grounds for appeal are considerably more limited than if the defendant had contested the charges at trial." *Bateman v. United States*, 875 F.2d 1304, 1307 (7th Cir.1989). While tactical decisions to forego an appeal do not necessarily render counsel's performance constitutionally ineffective, *Nutall v. Greer*, 764 F.2d 462, 465 (7th Cir.1985), the scenario that Belford describes is not an attorney making a "tactical decision." Rather, Belford alleges that his attorney failed to fulfill his duty to inform Belford about the availability of appellate remedies.

Belford has not cited and we have not found any cases from this circuit specifically defining an attorney's duty to explain appeal rights to a client who has pleaded guilty. Some circuits have held that counsel has no duty to advise a defendant of his limited appellate rights after a guilty plea. *E.g., Laycock v. New Mexico*, 880 F.2d 1184, 1187–88 (10th Cir.1989); *Carey v. Leverette*, 605 F.2d 745, 746 (4th Cir.), *cert.*

*denied,* 444 U.S. 983, 100 S.Ct. 488, 62 L.Ed.2d 411 (1979). On the other hand, some authorities hold that counsel is obligated to give such advice when the "defendant inquires about appeal rights or when there are circumstances present that indicate that defendant may benefit from receiving such advice." *E.g., Marrow v. United States,* 772 F.2d 525, 528 (9th Cir. 1985). We need not define Belford's counsel's duties in this case, however, nor direct the district court to hold an evidentiary hearing to determine precisely what Belford's counsel said to him. Even if Belford's counsel's misinformation to his client fell below an objective standard of reasonableness, Belford has not satisfied *Strickland's* prejudice prong because he has not even attempted to show that he would have succeeded on appeal.

Belford does not specifically identify the issues he would have raised on appeal; but presuming he would have raised the issues raised in his section 2255 motion, the government argues that Belford did not have a reasonable probability of prevailing on appeal and was therefore not prejudiced. Belford, by contrast, contends that "to conclude that Defendant has been prejudiced by his attorney's statements regarding the right to appeal is the only rational conclusion that can be drawn." (Appellant's Brief at 17). He balks at the government's argument and "specifically decline[s] the

[g]overnment's invitation to argue the merits" of the claims in his section 2255 motion (Reply Brief at 3). Belford contends that to show prejudice he must show only that he has "been denied the opportunity to have a patently inappropriate and illegal plea process reviewed by a detached and impartial tribunal" (Reply Brief at 3).

■ Belford misapprehends the nature of the prejudice showing that *Strickland* requires. Although a defendant has a right to appeal a judgment entered on a guilty plea, failure to appeal an appealable judgment is not ineffective assistance of counsel per se. *Oliver,* 961 F.2d at 1342. Rather, to meet the *Strickland* standard, Belford must demonstrate not only that his counsel's alleged misinformation regarding his appellate rights fell below an objective standard of reasonableness but also that if his counsel had filed an appeal Belford would have had a reasonable probability of obtaining relief. Because Belford has not even attempted to present an argument showing how he was prejudiced, he has waived the issue.[3] Consequently, he has failed to satisfy *Strickland* and therefore has fallen short in his efforts to satisfy the cause and prejudice test. The district court properly dismissed his section 2255 motion.[4]

Belford contends that the district court should not have dismissed his section 2255 motion without a hearing. "[T]o allow in-

---

**3.** Despite his staunch refusal to engage in a debate on the merits of his claims, Belford does include a section in his brief addressing the merits of his claim that the plea agreement should not have included provisions requiring Belford's wife and children to relinquish all interest in the stock of Circle Express and requiring Belford's wife to pay restitution. Belford's wife and children were not even indicted let alone convicted. Nevertheless, the district court ordered Belford to pay restitution in the manner described in the plea agreement. The appropriateness and indeed the enforceability of this provision in the plea agreement are dubious. At oral argument, the government's counsel herself seemed somewhat puzzled by the novelty of this provision. Nevertheless, the government correctly points out that Belford cannot collaterally attack his sentence on the basis of its impact on third parties. He has no standing to voice the complaints of his wife and children.

**4.** There is a narrow exception to the cause and prejudice standard. Where a constitutional violation has probably resulted in the conviction of one who is actually innocent, the Supreme Court has stated that the cause and prejudice standard should not preclude consideration of a section 2255 motion:

We remain confident that, for the most part, "victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard." [*Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1982) ]. But we do not pretend that this will always be true. Accordingly, we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.

*Carrier,* 477 U.S. at 495–96, 106 S.Ct. at 2649; *also see Coleman,* —— U.S. at ——, 111 S.Ct. at 2565; *Oliver,* 961 F.2d at 1342 n. 2. Belford has

discriminate hearings in federal post-conviction proceedings would eliminate the chief virtues of the justice system—speed, economy and finality." *Liss v. United States*, 915 F.2d 287, 290 (7th Cir.1990). A section 2255 petitioner is "not entitled to a hearing unless he can demonstrate cause for the failure to make a direct appeal and actual prejudice resulting from the alleged errors." *Id.* at 290. Because Belford failed to meet the prejudice prong of *Strickland* and consequently failed to meet the cause and prejudice standard for a section 2255 motion, the district court properly denied Belford an evidentiary hearing.[5]

### III. Conclusion

For the reasons set forth above, we AFFIRM.

---

not argued that this exception applies to his case.

5. We note that Belford has waived a possible argument. Belford included an ineffective assistance of counsel claim not only as his "cause" for failing to file a direct appeal but also as a substantive claim in his section 2255 motion. Normally, a claim of ineffective assistance of counsel is properly raised on collateral review rather than direct appeal, unless the record is sufficiently developed for the court of appeals to resolve the issue on direct appeal. *E.g., United States v. Williams*, 934 F.2d 847, 851 (7th Cir. 1991). If Belford's claim of ineffective assis-

tance of counsel at sentencing could not have been raised on direct appeal, Belford need not show cause and prejudice for his procedural default. Belford does not argue, however, that his failure to appeal does not preclude section 2255 review of his ineffective assistance of counsel claim. Belford has therefore waived this argument. *Cf. Qualls*, 774 F.2d at 851 (although some of petitioner's claims could not have been raised on direct appeal, and his failure to appeal would not preclude section 2255 review, petitioner did not raise this issue and has therefore waived it).